IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 10-cv-00046-WDM-BNB

AB INVESTMENTS, LLC,

    Plaintiff,

v.

ALLEN W. GELBARD, an individual,

    Defendant.

**ORDER**

Miller, J.

This matter is before me on Defendant Gelbard's Motion for an Order for Change of Venue and Transfer of this Action from this District to the Central District of California pursuant to 28 U.S.C. § 1404(a) ("Motion to Transfer") (ECF No. 14). Plaintiff AB Investments, LLC ("ABI") opposes the motion. After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion is denied.

BACKGROUND

This case, filed January 8, 2010, is an action between Plaintiff AB Investments ("ABI") and one of its former members, Defendant Allen W. Gelbard ("Gelbard"), a resident of California. ABI is a Colorado limited liability company with its principle place of business in Evergreen, Colorado. Its current members and officers are Robert Beaton ("Beaton") and Rodney Unger ("Unger"), each of whom is a resident of

Colorado. In this action, ABI seeks to recover an alleged debt of $2.6 million from Gelbard as well as damages for alleged breaches of fiduciary duty and for conversion of shares of stock in companies known as Regal One Corporation ("Regal One") and Neuralstem, Inc. ("Neuralstem"). On January 15, 2010, Gelbard with others filed an action against Beaton, Unger, and others in Los Angeles Superior Court in California alleging various claims, including fraud, conversion, breach of fiduciary duty, and others.

These lawsuits stem from the following background. Gelbard and Beaton formed ABI in 1998 to provide professional consulting services and to invest on its own account. Each contributed stock, warrants, and other assets to fund ABI. Their contributions made them equal interest-members in ABI. Both Gelbard and Beaton were named managers of the limited liability company. Gelbard's duties were to bring in business for the company, which he did primarily in California. Beaton managed the day-to-day business of ABI and was responsible for the books, records, banking, brokerage, accounting and tax preparation, which he did primarily in Colorado.

In January 1999, ABI sold shares that it held in USA Talks.com, Inc. ("USAT") for approximately $15 million. ABI divided the proceeds equally between the two members. Each one purchased a home; Beaton in Colorado, Gelbard in California ("the Ranch"). Thereafter, the members continued to take distributions from the proceeds of ABI's sale of the USAT stock.

Eventually, Beaton and Gelbard approached Unger to participate with ABI in two entertainment projects and to rehabilitate the Ranch. He agreed. Unger became a one-third member and manager with Beaton and Gelbard in January 2004.

At this point, the parties' stories diverge. Gelbard claims that Beaton entered a secret agreement with Unger to borrow up to $1 million to pay the mortgage on the Ranch and to fund personal and business expenses incurred by Beaton and Gelbard through ABI. Gelbard claims that Beaton illegally transferred title to the Ranch to Unger as a gift, without informing Gelbard. He claims that Beaton and Unger falsified the ABI books to show that the company was losing money and took the money for their own use. He further claims that Beaton and Unger fraudulently forced him to file bankruptcy in October 2005 by claiming that Gelbard had a $2.6 million debt to ABI.

ABI claims that Gelbard improperly manipulated the delivery of a stock certificate for 134,595 shares of Neuralstem to Malcolm Currie, Regal One's CEO, which is the company that took Neuralstem public. The CEO then refused to deliver the stock certificate to ABI. This prevented ABI from selling its shares of the stock. Meanwhile, ABI claims that Gelbard sold shares in Regal One to individuals and took the cash for his own personal use and benefit.

On January 8, 2010, Gelbard had his bankruptcy case dismissed. Gelbard had announced in open court that the reason he was dismissing his bankruptcy was so that he could sue ABI, Beaton, and Unger in California. The day that the case was dismissed, ABI filed its complaint in this court, which Gelbard claims is without merit and merely a tactical maneuver given his declared intent to file the California suit.

## STANDARD OF REVIEW

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The party moving to

3

transfer a case pursuant to section 1404(a) bears the burden of establishing that the existing forum is inconvenient. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) (citations omitted). In addition, the movant must satisfy the transferor court that the transferee court has jurisdiction to hear the case. Motions to transfer pursuant to this provision should be determined according to an "individualized, case-by-case consideration of convenience and fairness." *Id.* at 1516 (citations omitted).

A threshold matter for the transfer of a case under Section 1404(a) is whether the transferee court has personal jurisdiction over the parties. *See Hoffman v. Blaski*, 363 U.S. 335 (1960) (interpreting Section 1404(a) language, "where [case] might have been brought," as whether there is personal jurisdiction over all parties in the transferee court). California Rule of Civil Procedure § 410.10 states: "A Court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." *Id.* Due process allows that a party may be subject to personal jurisdiction if he has certain minimum contacts with the forum that the maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash*, 326 U.S. 310, 316 (1945). A business entity's presence in the jurisdiction is manifested by the activities of those who are authorized to act for it. *Id.*

"General jurisdiction exists when a nonresident's . . . contacts with a forum state are substantial, continuous, and systematic. In short, the . . . contacts are so wide-ranging that they take the place of physical presence in the forum as a basis of jurisdiction." *Doe v. Roman Catholic Archbishop of Cashel & Emly*, 177 Cal. App. 4th

209, 217 (2d Dist. 2009). In the alternative, a person can be subject to a "state's specific jurisdiction when he has purposefully availed himself of that state's benefits and the cause of action is related to or arises out of [his] contacts with the state." *Id.*

In determining whether to transfer a case to another jurisdiction I undertake a similar analysis as the second prong of the personal jurisdiction test. Among the factors I should consider are the following:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to [e]nsure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir.1967)). An action may be transferred under section 1404(a) at any time. *Id.*

## DISCUSSION

A. <u>Jurisdiction in the Central District of California</u>

In this matter, ABI has had substantial, continuous, and systematic contacts with the state of California from its formation to the present day. Where a business conducts activities of sufficient intensity to amount to doing of business in the state, the state clearly may exercise jurisdiction. *Titus v. Superior Court*, 23 Cal. App. 3d 792, 803,100 Cal. Rptr. 477, 486 (1972) (quoting *Restatement (Second) Conflict of Laws* § 35(a): "Doing business is doing a series of similar acts for the purpose of thereby realizing

pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts.")). However "[w]here the cause of action arises out of economic activity within the forum state, the contacts need not consist of repeated or continuous business transactions. . . . An isolated transaction may be sufficient." *Long v. Mishicot Modern Dairy, Inc.*, 252 Cal. App. 2d 425,428-29, 60 Cal. Rptr. 432, 435 (1967) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957) (single policy of insurance issued by mail to resident of California held sufficient to confer *in personam* jurisdiction on cause of action arising out of insurance contract)).

Gelbard was originally a fifty percent member and one of the two managers of the limited liability company. He was always domiciled in California. He worked on behalf of the company in California. The contacts between Gelbard and ABI continued, even after Unger joined the limited liability company, in the form of communications, purchases and sales of securities, and holding business meetings at the Ranch. In addition, ABI claims it owns the real property in California (the Ranch), which suggests substantial contact with the state. *See* CAJUN COURTS §140 ("[Although mere ownership of land may not suffice to subject a nonresident corporation to personal jurisdiction in an unrelated cause of action, such ownership may suffice when the cause of action is related to that ownership. *Id.*; *see also*, *Long v. Mishicot Modern Dairy, Inc.*, 252 Cal. App. 2d 425, 60 Cal. Rptr. 432 (1967)).

Even if ABI's contacts had not been substantial and continuous, ABI has purposefully availed itself of the state's benefits and the cause of action is related to or arises out of its contacts with the state. It carried out its business through Gelbard for

6

many years. During his membership, Gelbard was the primary business development agent of the company. He did most of his work in California. In addition, the three members of ABI met numerous times at the Ranch in California. ABI, in the persons of the members, made numerous trips to California to carry out the business of the company. The alleged acts that give rise to ABI's complaint occurred in California. In addition, the company communicated with Gelbard in California concerning the issues presented in this case. Accordingly, this action could have been brought in the Central District of California. That Court would have subject matter jurisdiction and personal jurisdiction over all of the parties. The defendant resides in California and a substantial part of the alleged events occurred in California. *See* 28 U.S.C. §1391(a)(1) and (2).[1]

B.  28 U.S.C. § 1404 Factors.

*Chrysler Credit Corp v. Country Chrysler, Inc.*, 928 F.2d 1509 (10th Cir. 1991) sets forth a list of factors I should consider in determining whether to transfer a case to another district.

(1)  *Plaintiff's choice of forum*

Plaintiff's choice of forum is given deference. *Ervin & Assoc., Inc. v. Cisneros*, 939 F. Supp. 793, 799 (D. Colo. 1996). "Unless the balance is strongly in favor of the

---

[1] I note Gelbard's argument that the Central District of California has jurisdiction over ABI because it has entered an appearance in Gelbard's current, California state court lawsuit. While it is true that a California state court has jurisdiction over a party from the time the summons is served or he makes a personal appearance, the rule holds only over the parties and the subject matter of that particular action and the subsequent proceedings incidental to it. *See* Cal. C. Proc. §410.50; *see e.g.*, *Goldman v. Simpson*, 72 Cal. Rptr. 3d 729; 160 Cal. App. 4th 255 (App. 2 Dist. 2008) (concluding court has jurisdiction for a renewal of judgment procedure because it was properly treated as "subsequent proceeding" under § 410.50). ABI's other lawsuits do not give the Central District of California personal jurisdiction over it for this action.

7

movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

Gelbard argues that this deference should not apply because ABI was allegedly forum shopping after Gelbard announced his intention to file a California suit upon the dismissal of his bankruptcy proceeding. Mot. to Transfer Venue at 10–12, ECF No. 14. However, given the bankruptcy stay, ABI could not have filed this action any sooner. Further, Colorado is where ABI was organized and is its legal place of residence, as well as the residence of ABI's managers, Unger and Beaton. Plainly, there exists significant Colorado connections to the facts giving rise to this lawsuit and Plaintiff ABI's choice to sue in the court of its residence is to be expected. Accordingly, the weight given to ABI's choice should not be lessened. *See Cook*, 816 F. Supp. at 669 (where facts giving rise to lawsuit have no significant connection to the plaintiff's forum, choice given reduced weight); *Ervin*, 939 F. Supp. at 799 (where plaintiff choice is not his residence, choice is given much less weight). The sort of nexus here to the chosen venue belies forum shopping. *Dealtime.com Ltd. v. McNulty*, 123 F. Supp. 2d 750, 758 (S.D.N.Y. 2000) Accordingly, ABI's choice weighs heavily against a transfer.

(2)    *Accessibility of witnesses and other sources of proof*

With respect to non-party witnesses, the Tenth Circuit has instructed that, if a party argues that a transfer is necessary to have a non-party witness testify, that party must state a factual basis for concluding that the witness's testimony is relevant and material, that the witness is unwilling to come to trial, that deposition testimony would be inadequate, or that compulsory process would be useful. *Scheidt v. Klein*, 956 F.2d at 966; *see also*, *In re Bennett Funding Grp., Inc.*, 259 B.R. 243, 249 (N.D.N.Y. 2001) (The

movant must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.).

Gelbard identifies a dozen witnesses who live in California who would have to travel to Colorado for trial. Gelbard's Reply (ECF No. 19) gives a brief summary of the testimony of certain non-party witnesses. *See id.* at 6. He has not provided specific information as to materiality or really anything other than conclusory averments. More information concerning the expected testimony, its relevance, whether the witnesses are unwilling to come to Colorado for trial, whether deposition testimony would be inadequate, or that compulsory process would be useful is necessary to make a meaningful determination on this factor. I do note, however, that ABI named only Beaton and Unger as possible witnesses. It did not name any third party witnesses who live in Colorado who would be inconvenienced by having to testify in California. *See* Response at 4. Because Gelbard did not provide sufficient information to properly analyze this factor, I will consider it neutral.

Advancements in copying technology and information storage has made the cost of reproducing documents and producing other evidence much lower than it once was. Rather than making hard copies of each document and shipping many boxes to opposing counsel, the technology is available for the parties to scan the documents to easily-mailed CDs or to a secure Internet site on which they can post their discovery responses.

The cost of depositions will be the same in either jurisdiction. California witnesses will have to be deposed in California. Colorado witnesses will have to be deposed in Colorado.

Given these considerations, I consider this factor is neutral, although the presence of nonparty witnesses in California weighs in favor of transfer.

(3) *Availability of compulsory process to ensure attendance of unwilling witnesses*

The availability of process to compel the testimony of witnesses is . . . an important factor" in the transfer analysis. *Cook v. Atchison, Topeka & Santa Fe R.R. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993). Under Fed. R. Civ. P. 45(b)(2), a district court may compel an unwilling witness who resides in the court's district or within 100 miles of the courthouse to attend any deposition, hearing, trial, production, or inspection specified in a properly issued subpoena. *Id.*; *see also*, *In re Bennett Funding Grp, Inc.*, 259 B.R. 243 (N.D.N.Y. 2001). If the non-party is more than 100 miles away from the courthouse, but lives in the same state, the court can modify the subpoena to ensure that the witness attends and is properly compensated. *Id.* (citing Fed. R. Civ. P. 45(c)(3)(A)(ii) and 45(c)(3)(B)(iii)).

Nonparty witnesses located in California, are outside the District of Colorado's subpoena power under Fed. R. Civ. P. 45(c)(3)(A)(ii) and any trial subpoenas for these witnesses to travel more than 100 miles would be subject to motions to quash under Fed. R. Civ. P. 45(c)(3). *See In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008).

Because Beaton and Unger are members and managers of the limited liability company, their attendance as witnesses in California as entity representatives is likely and may be compelled. *See Cont'l Fed. Sav. & Loan Ass'n v. Delta Corp.*, 71 F.R.D. 697 (W.D. Okl. 1976) (holding that if person to be examined is party to the action, a

10

subpoena is not required and notice is sufficient to require attendance ); *In re Ames Dept. Stores, Inc.*, 2004 WL 166193 (Bkrtcy.S.D.N.Y. 2004) ("Among the parties themselves, there is a general assumption that each will appear at trial. . . . If the court directs the attendance of the party, disobedience can be compelled with . . . a default judgment against the recalcitrant party."); *see also*, *In re Bennett Funding Grp, Inc.*, 259 B.R. 243 (N.D.N.Y. 2001) (noting that in the context of Section 1404, the court had the power to compel all the party witnesses from another state to appear before it).

Given that Gelbard's witnesses are all California residents and may not be subject to compulsory process to ensure their attendance at trial in Colorado, this factor weighs in favor of transfer.

    (4)    <u>*Cost of making necessary proof*</u>

The ABI Operating Agreement (ECF No. 14-3) provides that the "materially prevailing party shall be entitled and awarded, in addition to any other relief, to a reasonable sum of litigation expenses." *Id.* at ¶11.15. These expenses include attorneys' fees and actual expenses, including but not limited to, travel and lodging expenses. *Id.* This provision obviates the concern of the cost of making necessary proof, for the prevailing party. However, between now and the award of costs under the Agreement, each party will bear its own costs for attorneys' fees, costs, and travel. The initial cost of trying the case in Colorado will be higher for Gelbard because of the numerous witnesses he claims to need to call. This factor weighs slightly in Gelbard's favor.

    (5)    <u>*Enforcing a judgment if one is obtained equally difficult*</u>.

Whether the trial is heard in Colorado or California, the prevailing party is likely to

have to domesticate the judgment in the other state. This factor is neutral.

(6) *Relative advantages and obstacles to a fair trial.*

Neither party delineates any relative advantages or obstacles to a fair trial. This factor is neutral.

(7) *Difficulties that may arise from a congested docket.*

Neither party provides specific information concerning the relative congestion of the two district courts. Accordingly, I find this factor to be neutral.

(8) *Conflict of laws and advantage of having a local court determine questions of local law.*

Change of venue under Section 1404(a) is ordinarily only a change of courtrooms, not a change of law. Thus, after transfer, the same law is applied as would have been applied had the case remained in this court. *See Van Dusen v. Barrack*, 376 U.S. 612 (1964). Because the members chose Colorado law in their Operating Agreement, either court will apply Colorado law. The Central District of California is quite able to apply Colorado law to the issues of breach of contract, breach of fiduciary duty, and conversion. This factor is neutral.

In sum, after weighing all of these factors I conclude that, although the question is close, the defendant has not met his burden of showing that the convenience of witnesses and related issues are sufficiently strong to overcome the deference due Plaintiff's choice of forum.

Accordingly, it is ordered that Defendant Gelbard's Motion to Transfer (ECF No. 14) is denied.

DATED at Denver, Colorado, on October 14, 2010.

                BY THE COURT:

                s/ Walker D. Miller
                United States Senior District Judge