Gelbard's Exhibits for trial, not including impeachment exhibits, are:

1.      Transcripts of the Depositions of Beaton taken by the Securities and Exchange Commission ("SEC") in 1999 and taken by counsel for USA Talks.com, Inc. ("USAT") in 2006, including without limitation pages 320-24 of Volume II and pp. 870-83 of Volume V of Beaton's USAT Deposition;

2.      The USAT stock distribution chart submitted as Exhibit 7 to the 5th Amended Complaint in the lawsuit entitled *USAT Talks.com v. Mark Moskowitz, et al*, L. A. Superior Court Case No. BC 259794 (the "USAT Action"), as previously produced in Gelbard's bankruptcy and in the Los Angeles Superior Court Action entitled *Gelbard v. Unger et al.*;

3.      Bank statements and parts of the historic capital account ledgers for ABI, primarily from 1999 and 2000, including the General Ledger dated "As of December 31, 1999," along with other accounting records and financial documents for ABI, mostly from the period between 1999 and 2001, which show the payments made by Gelbard to purchase the horse ranch property in Agoura (the "Horse Ranch");

4.      Tax returns for ABI, for the years 1998 through 2005;

5.      Portions of ABI books and records that were maintained on an Excel Workbook;

6.      A letter from ABI accountant Morris Engel, to Beaton dated 5-2-99;

7.      A letter from ABI accountant Morris Engel to McDermott, Will and Emory tax attorney Elizabeth Mann, dated August 16, 1999, regarding "Allen Gelbard and Robert Beaton shares held in USA Talks.com, Inc. ("USAT");"

8.      A Letter of Agreement dated June 12, 2003, ostensibly between ABI and Manatee Design Group, Inc., a Nevada corporation with Rodney Unger (as its principal shareholder);

9.  Records of the contributions made to ABI at the time of its formation, by Beaton and Gelbard;

10.  Records of Beaton's payments to Mr. Gelbard, which Beaton claims were loans by him to Mr. Gelbard, in 1998 and 1999;

11.  Records related to the Horse Ranch, including the notation of $1.86 million paid from ABI and debited to Gelbard's capital account and the Grant Deed by which the Horse Ranch was conveyed to Unger in November of 2004, as a "gift for no consideration;"

12.  The Operating Agreement of ABI executed by and between Beaton and Gelbard on August 1, 1998;

13.  The Amendment and Joinder to Operating Agreement of ABI dated March 18, 2004, regarding the basis for Unger's partnership interest in ABI;

14.  A letter from ABI attorney Michael Littman, dated March 10, 2008, as attorney for Unger and Beaton, regarding Unger's financing and refinancing of the Horse Ranch, Littman's valuation of the Horse Ranch at $8.0 million and ABI's alleged ownership of stock in Regal One and Neuralstem;

15.  Portions of the transcript of Unger's Deposition in the USAT case, taken in October of 2006, and particularly at pp. 45-59 and 94-99, in which Unger admitted that he did not own the Horse Ranch when he represented to the court in the unlawful detainer action that he was the owner, in order to unlawfully evict Gelbard and Du Boise from that property, in October 2008;

16.  A handwritten memorandum dated October 22, 2000 from Morris Engel, the accountant for ABI, to Gelbard, Beaton and Aaron Grunfeld, with a subject line reading "Structure of AB Investment, LLC;"

17.     SEC Form 10-KSB for Regal One Corporation for the year ended December 31, 2004, reflecting the trading price of its stock at that time, which was $.64 per share and sets the value of ABI's stock position in Regal One as of the end of 2004, at approximately $2,331,000, based on its alleged ownership of 3,641,500 shares (3,641,500 x $0.64) and establishes Gelbard's share at approximately $777,000, based on his one-third ownership interest in ABI ($2,331,000 x 33.3%);

18.     The SB-2/A SEC filing of Intelliquis International Inc. filed on September 28, 2000, in which Intelliquis disclosed that: "On September 11, 2000, an action was commenced by us against certain of our shareholders, including former officers and attorneys of Intelliquis International, Inc., in the United States District Court for the District of Utah, Central Division, in a matter entitled *Intelliquis International, Inc. v. Robert M. Beaton, et al.*, case number 2:00CV00703;

19.     The 11-count Indictment issued on June 30, 2009, by a Federal Grand Jury, charging Drage, Adrian Wilson and Lester Mower and Eva Mower, all of whom are close associates of Beaton, with conspiring to conceal from the IRS, the profits stemming from their illicit mergers and acquisition "business" and with under-reporting or not reporting income over a span of approximately seven years;

20.     The Grand Jury Subpoena issued on June 3, 2008, and thereafter served upon Gelbard, seeking his knowledge and testimony regarding the fraudulent activities of Beaton, Unger and their associates, based on Gelbard's discussions with federal prosecutors;

21.     The chart entitled "ABI Connectivity to Indictees and Entities," prepared by plaintiff's counsel in the USAT Action, filed against ABI, Beaton, Unger, Gelbard and others, which details and documents the network of individuals and entities with whom Beaton was involved and to whom

he illegally transferred USAT shares;

22.     Bank statements for ABI showing transfers to and from entities listed in the subpoena served on Gelbard and the Indictment against Drage, Wilson and the Mowers, in amounts from $50,000 to $1.3 million, including: Drage, A-Business Funding (Mowers), Capital Services International (Drage, Wilson, Mowers), Gene Hochevar ("Hochevar"), and DHM Enterprises, LLC (Drage, Hochevar, Mowers);

23.     ABI's capital account ledgers dated August 31, 2000 and October 31, 2000, which evidence Beaton's and Unger's fraud, with well over $2 million in false entries on only the first page alone of the ledger;

24.     A document entitled "INFORMATION REQUIRED TO COMPLETE 1998 INCOME TAX RETURNS OF ROBERT BEATON," authored by ABI accountant Morris Engel ("Engel") of Engel, Kalvin, McMillan & Kipper, LLP, with a fax signature date of 5-2-1999, which evidences how Beaton took 100% of the proceeds from his illegal sales of ABI's 1998 USAT stock and charged all of the taxes on what he had diverted, converted and stolen, to ABI and Gelbard, which forced Gelbard to pay taxes on income he never received;

25.     The mortgage statement obtained by Unger, evidencing that he borrowed $3,774,673.66, from American Home Servicing, using Gelbard's Horse Ranch as security;

26.     The Complaint filed by Unger in Gelbard's bankruptcy, in 2008, by which Unger unsuccessfully sought to revoke Gelbard's discharge.

27.     Gelbard's Amended Bankruptcy Schedules, filed on December 18, 2009, in which he disclosed his interest in the $7.5 million Horse Ranch, as soon as he discovered that he had been lied to in 2005, 2006 and 2007, by Unger, Beaton and others;

-4-

28.    ABI's Balance Sheet as of December 31, 2007, showing a "Rental Income Receivable" from Gelbard in the amount of $720,000, dating back to at least 2004, which reflects ABI's claim to rent from Gelbard for ABI's ownership of the Ranch, that Unger falsely claimed to own in the unlawful detainer action;

29.    The Notice of Trustee's Sale for the Horse Ranch, showing that Unger was in default under the loan he obtained that was secured by the Horse Ranch and setting the sale for September 29, 2010; portions of the Horse Ranch was ultimately foreclosed upon by the lender when Unger refused to make payments on the $3.7 million loan he obtained secured by the Horse Ranch, while Unger retained other portions of the Horse Ranch;

30.    The Declaration of Rosslyn Hummer executed on June 24, 2009, filed by Hummer and Peterson as counsel for Unger in the Adversary Proceeding filed by Hummer, Unger and Peterson against Gelbard, in his bankruptcy, by which they unsuccessfully sought to revoke Gelbard's discharge;

31.    The Declaration of Eric Peterson executed on August 3, 2009, filed by Hummer and Peterson as counsel for Unger in Unger's Adversary Proceeding that Hummer, Unger and Peterson filed against Gelbard, in his bankruptcy, by which they unsuccessfully sought to revoke his discharge;

32.    The Order Closing Adversary Proceeding dated March 7, 2010, brought by Unger, by which he unsuccessfully sought to revoke Gelbard's discharge;

33.    A video of the Horse Ranch taken on April 13, 2005;

34.    Cover letter from Amy Goldman in Gelbard's bankruptcy, with accounting documents, dated November 6, 2009;

35.    ABI Ledgers showing amounts distributed to Gelbard;

36.    ABI Ledgers showing amounts for construction at the Horse Ranch;

37.    Bank Statements for the ABI Construction account;

38.    ABI Ledgers showing amounts advanced to Gelbard, Second Version;

39.    Order Dismissing Gelbard's bankruptcy, entered on January 8, 2010;

40.    Letter from Howard Bernstein to Kenneth Weinstock, dated May 4, 2007, regarding ABI's offer to purchase Gelbard's interest in ABI;

41.    Order Granting Trustee's Motion (1) For Authority to Sell Estate's Ownership Interest in AB Investments, LLC, entered on December 11, 2008, in Gelbard's Bankruptcy;

42.    Trustee's Second Motion (1) For Authority to Sell Estate's Ownership Interest in AB Investments, LLC, filed on February 25, 2009, in Gelbard's Bankruptcy;

43.    Notice of Trustee's Second Motion (1) For Authority to Sell Estate's Ownership Interest in AB Investments, LLC, filed on February 25, 2009, in Gelbard's Bankruptcy;

44.    Notice of Sale of Estate Property, filed on February 25, 2009, in Gelbard's Bankruptcy;

45.    Order Approving Trustee's Second Motion (1) For Authority to Sell Estate's Ownership Interest in AB Investments, LLC, filed and entered on April 6, 2009, in Gelbard's Bankruptcy;

46.    Transcript of Hearing on Trustee's Motion For Sale of Property Under Section 363(b) Re: Interest in AB Investments, LLC, held on March 18, 2009, in Gelbard's Bankruptcy;

47.    Statement of Proposed Buyer in Response to Debtor Allen Gelbard's Opposition to the Trustee's Motion For Order Authorizing Sale of Any Remaining Assets After Trustee's

Administration, filed on November 2, 2009, in Gelbard's Bankruptcy;

48.    Declaration of Forensic Accountant Coral M. Hansen in Support of Debtor's Request for the Trustee to Abandon the Remaining Claims and Assets to the Debtor, filed on December 1, 2009, in Gelbard's Bankruptcy;

49.    One-page document entitled "Identified Beaton USAT Transfers 1998 and 1999," showing $27,646,367 owed to Gelbard by Beaton.