IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-00046-MSK-BNB

AB INVESTMENTS, LLC,

      Plaintiff,

v.

ALLEN W. GELBARD,

      Defendant.

_____

OPINION AND ORDER IMPOSING SANCTIONS AND DISMISSING ACTION
_____

**THIS MATTER** comes before the Court *sua sponte*.

An understanding of the proceedings to date is necessary to the Court's reasoning herein, and thus, the Court will address that history in some detail.  Plaintiff AB Investments, Inc. commenced this action in January 2010, alleging three claims in the Complaint **(# 1)**: (i) breach of contract, relating to Mr. Gelbard's non-payment of certain loans allegedly made to him by the Plaintiff; (ii) breach of fiduciary duty, in that Mr. Gelbard allegedly transferred the Plaintiff's assets to his own personal uses; and (iii) conversion, based on similar facts as the fiduciary duty claim.  Mr. Gelbard, then represented by counsel, filed an Amended Answer **(# 15)**, asserting a variety of affirmative defenses.  In December 2010, shortly after the Plaintiff filed a summary judgment motion, Mr. Gelbard's counsel sought leave to withdraw **(# 53)**.[1]  On January 6, 2011,

_____

[1]Although not strictly relevant here, the grounds stated by counsel in seeking withdrawal included the fact that it had understood that it was being retained solely to serve as local counsel, and that "lead counsel would prepare drafts of pleadings and provide the substantive knowledge

the Magistrate Judge granted (**# 60**) counsel's motion, and since that time, Mr. Gelbard has defended this case *pro se*.

Meanwhile on December 28, 2010, the Magistrate Judge entered an Order (**# 59**) directing the submission of a Proposed Pretrial Order on May 4, 2011, and scheduling a Pretrial Conference for May 11, 2011.  The Plaintiff filed a Proposed Pretrial Order (**# 70**) that was not signed by Mr. Gelbard nor contained any information from him, and filed a separate declaration (**# 71**) explaining that counsel for the Plaintiff had repeatedly advised Mr. Gelbard of his obligation to participate in drafting a Proposed Pretrial Order and had invited Mr. Gelbard to contact the Plaintiff to do so, but that Mr. Gelbard had not responded.  On May 11, 2011, the Magistrate Judge conducted (**# 72**) the scheduled Pretrial Conference.  Mr. Gelbard did not appear.  The Magistrate Judge gave the Plaintiff until May 13, 2011 to file a motion for default judgment.

On May 13, 2011, the Plaintiff filed two motions.  First, it moved to dismiss (**# 75**) its second and third claims for relief without prejudice, leaving only the breach of contract claim relating to non-payment of the alleged loans extant.  Second, it moved for a default judgment (**#76**), arising from Mr. Gelbard's non-participation in the Pretrial Conference and related proceedings.  Mr. Gelbard filed a response (**# 77**) to the motion for default judgment, primarily arguing that his living situation made receiving mail difficult (such that he did not receive the Court's Order setting the Pretrial Conference) and that "[the Plaintiff's] counsel . . . went to great lengths to prevent me from being advised of the Pre-Trial Hearing before this Court on May

---

and information necessary to mount a defense."  However, counsel stated that it "has not been provided with information, documents, and facts necessary to serve either as local or lead counsel."

11th."  The Court[2] denied (# 78) the motion for default judgment, finding that the Order setting the Pretrial Conference was issued at a time when Mr. Gelbard was still represented by counsel, and that there was no indication in the record that, when counsel was granted leave to withdraw, it was instructed to "inform Mr. Gelbard of upcoming filing or hearing dates."  Thus, the Court determined that "Mr. Gelbard's failure to defend was no an intentional failure . . . but was due rather to lack of notice resulting from a combination of circumstances."

On June 7, 2011, the Magistrate Judge issued an Order (# 79) setting a new Pretrial Conference for July 12, 2011, and directing the parties to file a Proposed Pretrial Order by July 5, 2011.  Mr. Gelbard did participate in the preparation of this Proposed Pretrial Order (# 82), tendering a lengthy (approximately 12 pages) and somewhat discursive discussion of his sixteen affirmative defenses and an extensive, occasionally argumentative, exhibit list.  The Magistrate Judge conducted (# 85) the Pretrial Conference on July 12, 2011, but refused to approve the Proposed Pretrial Order.[2]  Instead, the Magistrate Judge directed the parties to "submit a proposed Pretrial Order, in accordance with the directions of the Court, by September 5, 2011." (That deadline was later vacated by the Magistrate Judge upon reassignment of the case.)

Upon reassignment of the case to the undersigned, the Court issued a Trial Preparation Order (# 93), setting a Pretrial Conference for October 19, 2011, and requiring the parties to submit a Proposed Pretrial Order – meeting certain specifically-described requirements – prior to

---

[2]This Order was entered by Senior Judge Miller, who was the presiding judge in the case at the time.  Upon Judge Miller's retirement in late 2011, the case was transferred to the undersigned.

[2]The proceedings of this Pretrial Conference have not been transcribed, and thus, the record does not reflect the particular defects cited by the Magistrate Judge in refusing to approve the parties' Proposed Pretrial Order.

that Conference.  On October 12, 2011, the Plaintiff filed two documents of note: an Amended Motion to Dismiss (**# 99**) the remaining claim without prejudice, and a Proposed Pretrial Order (**# 98**).  The Amended Motion to Dismiss sought to dismiss the remaining claim without prejudice.  The Proposed Pretrial Order consisted of a new statement of claims by the Plaintiff that partially complied with the format required by the Court's Trial Preparation Order, and what appears to be a verbatim recitation by Mr. Gelbard of the same 12-page narrative regarding affirmative defenses tendered in the Proposed Pretrial Order rejected by the Magistrate Judge.

On October 20, 2011, the Court conducted the Pretrial Conference.  At that hearing, Mr. Gelbard arranged for the telephonic presence of Mr. Fuchs, an attorney who was representing him in a related matter in California.  Mr. Fuchs declined to immediately enter an appearance on Mr. Gelbard's behalf, owing to the need to first obtain admission to practice in this District, but noted that he would "likely" do so "if the matter proceeds."  Because Mr. Fuchs was not prepared to enter an appearance for Mr. Gelbard, the Court informed Mr. Gelbard that he would be deemed to continue to represent himself *pro se*.

The Court then turned to the Plaintiff's Motion to Dismiss.  Mr. Gelbard objected to the request insofar as it sought dismiss of the remaining claim <u>without</u> prejudice, but stated his willingness to consent to a dismissal of the breach of contract claim <u>with</u> prejudice.  The Plaintiff declined that counterproposal, explaining that Mr. Gelbard had sued the Plaintiff in a proceeding in California, and although that proceeding had been dismissed on limitations grounds, Mr. Gelbard was appealing that dismissal.  Thus, if the dismissal of the California proceeding was reversed on appeal, the Plaintiff wished to preserve its right to bring the breach of contract claim as a counterclaim in that proceeding, preventing an agreement here to dismiss that claim with

4

prejudice.  The Court noted that the breach of contract claim was otherwise ready for trial, and thus, gave the Plaintiff the choice between having the breach of contract claim determined and dismissing it with prejudice.  In response, the Plaintiff stated that it would prefer to have the claim determined.

The Court then turned to Mr. Gelbard, proposing that he accept a conditional dismissal of the breach of contract claim without prejudice – that is, the dismissal would be with prejudice, but if Mr. Gelbard's appeal of the California action was successful, the dismissal of the Plaintiff's breach of contract claim would be converted to being without prejudice, allowing the Plaintiff to assert it as a counterclaim in the California action.  Mr. Gelbard declined that offer, explaining his desire to use the trial proceeding to explore "the issue in this case that has never been before a court which is the accounting of AB Investments, LLC."  He stated his intention to explore (apparently through his affirmative defenses), issues of "malfeasance, wrongdoing, [and] criminal activity" by the Plaintiff and its officers.  Although the Court emphasized that the scope of the issues at trial would be tightly circumscribed to relate only to those issues implicated by the Plaintiff's breach of contract claim, Mr. Gelbard nevertheless stated that "I still feel that the claim that has been asserted against me is false and without any proof whatsoever.  How do I clear my name if I don't go to trial?"  Finding that there was a fundamental disagreement between the parties as to the effect of the Plaintiff's proposed dismissal, and finding that the case was otherwise ready for trial, the Court therefore denied the Plaintiff's motion to dismiss.

The Court then turned to the parties Proposed Pretrial Order.  With regard to the Plaintiff's portion of the submission, the Court noted that the Plaintiff had partially complied with the Court's required format, properly identifying the claim, its elements, and the particular

evidence the Plaintiff would use to prove each element, but that the Plaintiff had not identified the specific facts that it contended the evidence would establish with regard to each element. With regard to Mr. Gelbard's statement of affirmative defenses, the Court noted that Mr. Gelbard had not properly identified the nature and elements of his affirmative defenses, and further noted that many of the stated defenses were not "affirmative" – that is, not defenses upon which Mr. Gelbard bore the burden of proof.  The Court also noted other defects in the Proposed Pretrial Order, such as the parties' failure to reach any factual stipulations and the failure to assemble joint witness and exhibit lists.

Accordingly, the Court instructed the parties that they would have to submit a revised Proposed Pretrial Order that properly complied with the Court's requirements, along with proposed *voir dire* questions and proposed jury instructions, by November 10, 2011.  Mr. Gelbard stated that, the last time the parties worked together to prepare a Proposed Pretrial Order, he "received [the Plaintiff's proposed language] literally days before it was due when he had weeks to prepare before."  As a result, Mr. Gelbard requested that the Court fix a specific date upon which the Plaintiff would supply him with the Plaintiff's portion of the Proposed Pretrial Order, and the Court directed that the Plaintiff do so by November 4.  The Court then set November 17, 2011 as the date for a continuation of the Pretrial Conference.

On November 10, 2011, the Plaintiff filed a revised Proposed Pretrial Order **(# 115)** that remedied the defects in the Plaintiff's statement of claims, but continued to contain the same 12-page narrative statement of Mr. Gelbard's defenses that had been present in the two prior iterations.  (Certain other matters, including a version of Mr. Gelbard's exhibit list, pared down by approximately 50%, were also submitted.)  Along with that document, the Plaintiff's counsel

6

filed his own affidavit **(# 118)** detailing the nature of his communications with Mr. Gelbard and Mr. Fuchs.

On November 17, 2011, the Court conducted the continued Pretrial Conference.  Mr. Gelbard arranged for Ms. Gilfillam, an associate of Mr. Fuchs, to participate by telephone.  The Court noted that neither Mr. Fuchs had not yet entered his appearance for Mr. Gelbard, and inquired whether Ms. Gilfillam would be doing so at this hearing.  Ms. Gilfillam acknowledged that she was admitted to practice in this District, but stated that she would not be entering an appearance for Mr. Gelbard, apparently because Mr. Fuchs was still intending to do so.  Accordingly, the Court again informed Mr. Gelbard that, without a formal entry of appearance by counsel, he was "on his own."

The Court then addressed the most recently-filed Proposed Pretrial Order, inquiring of Mr. Gelbard whether he participated in its drafting.  Mr. Gelbard explained that he had not, arguing that the material supplied by the Plaintiff on November 4 was incomplete for various reasons.  The Court then inquired whether Mr. Gelbard had since obtained enough information to prepare his portions of the Proposed Pretrial Order, Mr. Gelbard stated certain material he was still lacking.  At this point, the Court explained to Mr. Gelbard:

> It's not a matter of response, Mr. Gelbard.  It's a matter of you stating your position.  And your position is simply affirmative defenses.  This is not discovery.  This is a final pretrial order.  And as I look at it, you have not appropriately designated affirmative defenses.  I previously explained that your statement was deficient for a variety of reasons, including that the 16 listed defenses were not necessarily affirmative defenses upon which you bore the burden of proof.  They were not defenses cognizable in response to a breach of contract claim, and in any event, the defenses were set forth in narrative form and did not identify the specific elements of each defense or the evidence you were going to rely upon to prove each element.  You've made no attempt to deal with that.

> . . . Now, you've known what the nature of this claim was during the course of this litigation, which has been ongoing now for a significant period of time and we're not going to play games anymore.  I'm going to set a deadline here for the submission of a complete final pretrial order, and whether Mr. Fuchs is involved in it or not, Mr. Gelbard, you are going to have to designate appropriate affirmative defenses, specifying the elements on which you have the burden of proof and the evidence you're going to rely on.

The Court addressed certain other issues requiring revision by the parties, giving the parties until December 8, 2011 to file a properly-presented Proposed Pretrial Order.  Mr. Gelbard inquired whether the Court would again set a specific date for the Plaintiff to tender its proposed language to Mr. Gelbard for response, and the Court declined to do so, stating "No, I'm not going to do that anymore . . . You submit what you submit.  They submit what they submit. . . [I]f you can't work together then you're going to submit separate things."  At the same time, the Court set the case for a jury trial to commence on January 30, 2012.

On December 6, 2011, two days before the revised submissions were do, Mr. Gelbard moved (# 120) for an extension of the deadline for filing.  The motion offered four justifications for the request: (i) Mr. Gelbard "[had] yet to receive the Plaintiff's portion of the joint filing"; (ii) that Mr. Gelbard would be participating in a mediation involving this and several other cases on December 8, and he "would like to avoid incurring additional legal fees before the mediation"; (iii) that Mr. Fuchs was unavailable because of a recent surgery; and (iv) Mr. Fuchs had yet to receive a book about Colorado Jury Instructions that he had requested.  The Court denied (# 121) Mr. Gelbard's motion in a text order, observing that "the motion makes reference to Defendant having counsel[;] no such counsel has entered an appearance in this matter," and otherwise finding that "no good cause [has been] shown."

On December 8, 2011, the Plaintiff filed another revised Proposed Pretrial Order (# **123**) stating that it was "unilateral."  The filing contained no statement of affirmative defenses by Mr. Gelbard.

On December 14, 2011, the Court issued an Order to Show Cause (# **124**) to Mr. Gelbard.  Noting many of the preceding facts, as well as the fact that the docket still showed no submissions by Mr. Gelbard, the Court directed that Mr. Gelbard show cause why he should not be sanctioned "for failure to comply with the December 8, 2011 deadline."  The Order to Show Cause noted that "such sanctions may include (but not be limited to) striking [Mr. Gelbard's] affirmative defenses."

On December 27, 2011, Mr. Gelbard filed his response (# **125**) to the Order to Show Cause.[3]  He explains that "over the past five weeks . .  I have endeavored to follow the Court's instructions regarding the submission of trial documents," noting his efforts to reduce the number of exhibits, reducing the time estimated for trial examination, and entertaining (but not reaching) stipulations as to certain facts.  With regard to his affirmative defenses, Mr. Gelbard explained that "I have also reviewed [the Plaintiff's] draft of the Pre-Trial Order in order to provide the material needed for my affirmative defenses . . . and with Mr. Fuchs, that information was prepared in the Court-required format and provided [to Plaintiff's counsel], again with the understanding that [Plaintiff's counsel] would insert that information on the Pre-

---

[3]The Court notes that Mr. Gelbard's response was filed after the December 21, 2011 deadline given in the Order to Show Cause, but accepts at face value Mr. Gelbard's contention that he did not receive a copy of the Order to Show Cause in the mail until December 22, 2011. As such, the Court treats Mr. Gelbard's response as timely.

Trial Order and filed the revised Order with the Court."[4]   Somewhat incongruously, Mr.

Gelbard's response continues, "Unfortunately, I was unable to provide this information [to

Plaintiff's counsel] for filing by December 8th, because I was waiting to get his final draft of [the

Plaintiff's] portion of the material, and he did not provide his portion until after 7:00 PM on

December 7th."   Mr. Gelbard goes on to state that "it now appears the material I provided . . . was

not included on the documents [Plaintiff] filed with the Court. . . I will make every effort to work

over the Christmas weekend to prepare this material for filing by Tuesday, December 27th. . . ."

On December 28th, Mr. Gelbard filed various documents, including a Proposed Pretrial Order

containing his statement of affirmative defenses.

## ANALYSIS

### A.  Standard of review

Mr. Gelbard stands in an unusual position in this matter: he is admittedly being

represented and advised by counsel – both Mr. Fuchs and Ms. Gilfillam – and acknowledges

their assistance in drafting various documents in this action, but at present, no counsel has

formally entered an appearance on his behalf in this litigation.   Technically, then, Mr. Gelbard is

a *pro se* litigant for purposes of this dispute.   The Court is obligated to construe a *pro se*

litigant's pleadings liberally.   *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).   However, such

liberal construction is intended merely to overlook technical formatting errors and other defects

in the *pro se* party's use of legal terminology and proper English.   *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir. 1991).   *Pro se* status does not relieve a party of the duty to comply with

---

[4]Plaintiff's counsel responded with an affidavit (**# 126**) stating that it had received only a
copy of Mr. Gelbard's exhibit list.

the various rules and procedures governing litigants and counsel or the requirements of the

substantive law, and in these regards, the Court treats *pro se* parties according to the same

standard as counsel licensed to practice law before the bar of this Court.  *See McNeil v. U.S.*, 508

U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).  Out of an

abundance of caution, the Court extends to Mr. Gelbard the liberal construction of his filings to

which *pro se* parties are entitled, but the Court notes that doing so does not alter its analysis

herein.

   **B.  *Ehrenhaus* factors**

   It is undisputed that Mr. Gelbard failed to comply with the Court's Order requiring the

submission of revised pretrial documents by December 8, 2011.  In fixing an appropriate

sanction for a violation of this directive, the Court is encouraged to consider the familiar

*Ehrenhaus* factors.  *Lee v. Max Intern., LLC*, 638 F.3d 1318, 1320-21, 1323 (10th Cir. 2011),

citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).  The *Ehrenhaus* factors are "a

non-exclusive list of sometimes-helpful criteria or guide posts the district court may wish to

consider in the exercise of what must always remain a discretionary function."  *Id.* at 1323.

Those factors are: (i) the degree of prejudice to the opposing side from the party's

noncompliance; (ii) the degree of prejudice to the judicial system from the party's

noncompliance; (iii) the culpability of the litigant; (iv) whether the court warned the party in

advance of the potential sanction; and (v) the efficacy of lesser sanctions.  *Ehrenhaus*, 965 F.2d

at 921.  The Court will address each factor in turn.


   1.  Prejudice to the Plaintiff

11

The Court finds that Mr. Gelbard's failure to promptly file his pretrial submissions on December 8 might result in some prejudice to the Plaintiff, but that prejudice is somewhat diffuse and ephemeral.  The most significant aspect of Mr. Gelbard's noncompliance with the Court's Order is the delay in the concrete articulation of and identification of the evidence supporting his affirmative defenses.  The Plaintiff might be heard to complain that Mr. Gelbard's tardiness in making such identification is prejudicial to it insofar as it delays the Plaintiff's ability to begin preparation of a response to those affirmative defenses, but the record indicates that the Plaintiff has, to some extent, already done some such preparation.  In the most recent iteration of the Proposed Pretrial Order, the Plaintiff states that it "can only make sense of two affirmative defenses" – statute of limitations and bad faith/unclean hands – and proceeds to address those defenses as part of its pretrial submission.  Assuming Mr. Gelbard's submissions identify additional cognizable defenses, it is possible that the Plaintiff could claim prejudice in not having had prompt notice of such defenses, but it appears to the Court that such prejudice is difficult to assess and quantify.  Accordingly, this factor weighs in favor of a mild sanction against Mr. Gelbard.

2. <u>Prejudice to the judicial system</u>

The same reasoning, however, does not extend to the question of the prejudice that Mr. Gelbard's conduct works on the judicial system.  Most immediately, Mr. Gelbard's failure to promptly file his pretrial submissions by December 8, 2011 prejudiced the judicial system insofar as this Court was required to issue the Order to Show Cause, to review Mr. Gelbard's response, and to appropriately resolve the matter (*e.g.* via this Order) – all tasks that would not be required had Mr. Gelbard complied with the deadline.  The resources spent by the Court in

12

handling these matters are resources that were unnecessarily diverted by Mr. Gelbard's conduct from other cases requiring judicial attention.

But this prejudice is somewhat magnified by the course of proceedings to date, as the Court has set forth in detail above. Thus far, the Court has conducted <u>four</u> Pretrial Conferences, and reviewed <u>four</u> iterations of Proposed Pretrial Orders, all without Mr. Gelbard adequately articulating his affirmative defenses. The case could have been ready for trial as early as May 2011, but the parties' inability to prepare a proper Pretrial Order has delayed the Court's ability to commence that trial by more than half a year. While the Plaintiff may also bear some responsibility for initial delay, conduct attributable solely to Mr. Gelbard's side of the case bookends this period of time, with Mr. Gelbard's failure to appear at the initial Pretrial Conference resulting in a delay in conducting that conference from May to July 2011, and Mr. Gelbard's failure to properly revise his statement of defenses at the same time that the Plaintiff properly revised its own statement of claims resulting in delay from November 2011 to the present. This delay in moving this case to trial also disrupts the Court's ability to expeditiously process this and other cases, resulting in further prejudice to the judicial system.

The scope of the sanctions being considered are limited to Mr. Gelbard's failure to comply with the December 8, 2011 deadline, not any other conduct.[5] But in assessing the degree to which Mr. Gelbard's inattention to the December 8, 2011 deadline has worked prejudice on the judicial system, the Court notes that the December 8 failure is part of a familiar pattern that has emerged since Mr. Gelbard's counsel's withdrawal in December 2010. Since that time, Mr.

---

[5]Indeed, Judge Miller found that Mr. Gelbard was not culpable for his own non-attendance at the May 2011 Pretrial Conference.

Gelbard has demonstrated repeated inattention to court deadlines and an unwillingness to comply with obligations as a litigant that rest entirely on his shoulders (that is, obligations that exist independently of the Plaintiff's own non-compliance with its own duties as a litigant).  The December 8 noncompliance, as the technical subject of the sanctions here, is part and parcel of a pattern of similar actions by Mr. Gelbard that, collectively, have worked an even greater prejudice on the legal system than his noncompliance with the December 8 deadline alone.

Accordingly, the Court finds that this factor tips significantly in favor of a harsher sanction.

### 3. Mr. Gelbard's culpability

In assessing Mr. Gelbard's culpability for the failure to meet the December 8 deadline, the Court first elaborates on its ruling denying Mr. Gelbard's December 6 motion seeking an extension of that deadline.  Naturally, the arguments raised in that motion embody the most likely grounds upon which Mr. Gelbard might contend that compliance with the December 8 deadline was beyond his control.

As noted above, Mr. Gelbard offered four arguments, none of which the Court found meritorious.  Two of those related to Mr. Fuchs' inability to assist Mr. Gelbard.  As the Court noted in its Order denying the motion, these arguments are unavailing, insofar as neither Mr. Fuchs nor any other counsel has entered an appearance on Mr. Gelbard's behalf.  Mr. Gelbard has been repeatedly advised that, until Mr. Fuchs, Ms. Gilfillam, or someone else enters a formal appearance on his behalf, he is proceeding *pro se* and is personally responsible for the defense of this case.  The Court recognizes that Mr. Gelbard may rely heavily on his attorneys for advice in representing himself, but the fact remains that, for whatever reason, his attorneys chose not to

enter an appearance here.  Without such an appearance, the unavailability of non-appearing

counsel does not relieve Mr. Gelbard himself from responsibility for complying with the Court's

deadline.

The fact that Mr. Gelbard was participating in a mediation of this and other cases (and

hoped to avoid "incurring additional legal fees" by postponing the deadline in case a settlement

resulted) also does not relieve him from responsibility for his noncompliance with the deadline.

As this Court's Practice Standards explain, "settlement discussions are encouraged at all phases

of the litigation process [but] pretrial deadlines will not be continued or vacated to facilitate

settlement negotiations or alternative dispute resolution."  MSK Practice Standard III.J.1.  The

logic for such a rule is neatly illustrated here: Mr. Gelbard apparently believed that the mediation

would result in a settlement of this case and relief from the obligation to further revise his

pretrial statements, but that belief was apparently unfounded; the case continues.  A rule that

allowed adjourning of deadlines simply because parties think that upcoming discussions might

result in a settlement would render those deadlines ineffectual.  Mr. Gelbard may have

considered it inefficient to simultaneously revise his pretrial submissions and discuss settlement

of the case, but there was no actual impediment to him doing both.  Thus, the fact of the

scheduled mediation does not affect Mr. Gelbard's culpability for missing the deadline.

Finally, Mr. Gelbard argued that he "[had] yet to receive the Plaintiff's portion of the

joint filing."  But, as noted above, Mr. Gelbard raised that precise concern at the November

Pretrial Conference, and was instructed by the Court that failure to receive the Plaintiff's

submission would not relieve Mr. Gelbard of his own obligations; as the Court stated, "You

submit what you submit.  They submit what they submit. . . [I]f you can't work together then

you're going to submit separate things."  Moreover, at that conference, the Court rejected Mr.

Gelbard's argument that he could not prepare his statement of defenses without first seeing the

Plaintiff's statement of claims: "It's not a matter of response, Mr. Gelbard.  It's a matter of you

stating your position.  And your position is simply affirmative defenses. . . you've known what

the nature of this claim was during the course of this litigation, which has been ongoing now for

a significant period of time."  Notably, Mr. Gelbard was able to articulate his affirmative

defenses in the form of a lengthy narrative as early as July 2010; there is no reason why he could

not articulate those defenses in the form required by the Court by December 8, particularly when

the Court had deemed the Plaintiff's statement of claims to be largely acceptable by the time of

the November Pretrial Conference.

Accordingly, the Court finds that nothing in the December 6 motion alters the conclusion

that Mr. Gelbard is entirely culpable for the failure to meet the December 8 deadline.

Next, the Court examines Mr. Gelbard's statements in the response to the Order to Show

Cause to see whether he identifies any other circumstances that would diminish his culpability

for missing the deadline.  As mentioned above, the response is somewhat internally inconsistent.

Mr. Gelbard first states that "I have also reviewed [the Plaintiff's] draft of the Pre-Trial Order in

order to provide the material needed for my affirmative defenses . . . and with Mr. Fuchs, that

information was prepared in the Court-required format and provided [to Plaintiff's counsel]"

prior to December 8.  Although this statement, taken alone, would suggest that Mr. Gelbard did

indeed meet the deadline and the failure to file his statement of defenses was the fault of the

Plaintiff, this assertion conflicts with another representation by Mr. Gelbard in the response:

"Unfortunately, I was unable to provide this information [to Plaintiff's counsel] for filing by

December 8th, because I was waiting to get his final draft of [the Plaintiff's] portion of the material," and that material did not arrive until late in the evening on December 7.  Thus, there is some ambiguity as to whether Mr. Gelbard did or did not submit a statement of defenses to the Plaintiff prior to December 8.

That ambiguity is persuasively resolved by other evidence in the record.  Mr. Gelbard's statement that "I will make every effort to work over the Christmas weekend to prepare this material for filing by Tuesday, December 27th" suggests that the document was not yet complete by December 23.   If the document was complete (and had been provided to the Plaintiff) prior to December 8, there would be no need for Mr. Gelbard to "work . . . to prepare this material for filing" by December 27; the document could simply have accompanied Mr. Gelbard's response to the Order to Show Cause.  Moreover, Mr. Gelbard's December 6 motion recites that, as of that date, Mr. Gelbard had not received the Plaintiff's revisions to its own submissions.  It seems extraordinary that Mr. Gelbard could have thereafter received the Plaintiff's submissions, reviewed them with (the largely unavailable) Mr. Fuchs, drafted his own statement of defenses in response, and transmitted those documents to the Plaintiff prior to December 8.

Accordingly, the Court finds no persuasive evidence to suggest that Mr. Gelbard submitted a revised statement of defenses to the Plaintiff prior to December 8.  This factor tips significantly in favor of a harsher sanction.

4.  Prior warnings

*Ehrenhaus* recommends that the Court consider whether the offending party was previously warned of the potential consequences of not complying with the order.  The Court acknowledges that it never orally warned Mr. Gelbard that the failure to comply with the

17

December 8 deadline could result in sanctions, but the record is otherwise replete with advisements to Mr. Gelbard that compliance with the Court's requirements was necessary. The Magistrate Judge suggested the Plaintiff file a motion for default judgment as a result of Mr. Gelbard's failure to participate in drafting a Proposed Pretrial Order in May. This Court's oral advisements to Mr. Gelbard at the October and November Pretrial Conferences never expressly warned of potential sanctions, but they did make clear that compliance with the Court's instructions was not optional. In any event, the mere fact that a party did not receive advance warning of possible sanctions does not, of itself, prevent the imposition of sanctions under *Ehrenhaus*. *See Phillips Electroncis North America Corp. v. BC Technical*, 773 F.Supp.2d 1149, 1212 (D.Ut. 2011); *see also Nasious v. Two Unknowk BICE Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (suggesting that "the [prior warnings] and culpability tests are in some sense the opposite sides of the same coin").

However, the Order to Show Cause expressly advised that "such sanctions may include (but not be limited to) striking [Mr. Gelbard's] affirmative defenses." Thus, Mr. Gelbard was on notice that if he filed no response to the Order to Show Cause, or if his response did not justify his actions, sanctions could be imposed. The Court finds that this advisement, following on the heels of repeated court orders directing him to submit information relative to his affirmative defenses is sufficient to advise him of the consequences of his inaction.

### 5. Lesser sanctions

Finally, the Court turns to the question of whether lesser sanctions can remedy the prejudice resulting from the party's conduct. The Court is obligated to select the least punitive sanction that will cure the prejudice, and should avoid imposing sanctions of dismissal with

prejudice except where absolutely necessary, so as to preserve the preference for resolving cases on their merits, rather than due to technical violations. *Ehrenhaus*, 965 F.2d at 920-21. This is particularly true in cases of *pro se* litigants. *Id.*, n. 3.

Here, the Court observes that the prejudice resulting from Mr. Gelbard's behavior is largely a prejudice to the judicial system, rather than prejudice to the Plaintiff. Often, prejudice to the opposing party can be cured by requiring the offending party to pay the attorneys fees and costs incurred by the opponent as a result of the offending conduct, or by imposing limitations on the admissibility of evidence at trial. *See e.g. Iselo Holdings, LLC v. Coonan*, 2010 WL 3630125 (D. Colo. Sept. 10, 2010) (slip op.) But such monetary sanctions are less appropriate where the prejudice is to the judicial system; it is far more difficult to quantify the injury to the system in monetary terms and there are constitutional concerns that result from the Court issuing monetary sanctions payable to itself. And admissibility restrictions do nothing to address the injury to the judicial process. Prejudices to the judicial system are simply more difficult to effectively cure.

Mr. Gelbard's offense primarily involved a failure to adequately identify and articulate the affirmative defenses on which he intended to proceed. As noted, to some degree this adversely impacted the defendant, but it primarily impacted the judicial process in this case and the Court's scheduling of trial of this case and others. An appropriate sanction, then, would be to strike those affirmative defenses. By doing so, the Court punishes the Mr. Gelbard's conduct by depriving him of the very thing that he was dilatory in presenting. Observant of both *Ehrenhaus*' instruction that dismissals with prejudice be avoided whenever possible, and the fact that Mr. Gelbard's offense is procedural in nature (rather than fatal substantive flaws in the

defenses), the Court recognizes that the striking of the defenses does not operate as an adjudication on their merits.

This sanction has an appealing effect in the peculiar circumstances of this case. The Plaintiff has previously expressed a desire to dismiss the breach of contract claim without prejudice; a request that Mr. Gelbard objected to largely because he wished to have a trial on the issues presented in his affirmative defenses. If Mr. Gelbard's affirmative defenses are stricken, but without any prejudicial effect, the justification for opposition to the Plaintiff's requested dismissal without prejudice evaporates. Instead, the parties are left in the state of suspension proposed by the Court at the October Pretrial Conference: the Plaintiff's breach of contract claim is dismissed, subject to being re-asserted if the California action by Mr. Gelbard is revived. Mr. Gelbard is not prevented from asserting his affirmative defenses (either as such or as substantive claims against the Plaintiff) in the California action, if it is revived. Neither party's substantive rights are compromised in any way. Mr. Gelbard may have desired an opportunity to have the Plaintiff's claim against him brought promptly to trial, but his own dilatory conduct in this action weighs against granting his wish, particularly over the Plaintiff's objection to proceeding on its own claim.

## CONCLUSION

Accordingly, the Court finds that an appropriate sanction for Mr. Gelbard's failure to comply with the December 8 deadline is the striking of his affirmative defenses, albeit with a recognition that striking is without prejudice to those defenses being asserted in any other action between the parties. Those defenses are therefore **STRICKEN**. Such a sanction warrants the Court *sua sponte* revisiting its ruling on the Plaintiff's Amended Motion to Dismiss **(# 99)**,

finding that in the absence of affirmative defenses by Mr. Gelbard, there is no impediment to

dismissing the Plaintiff's sole breach of contract claim against Mr. Gelbard without prejudice.

The Court thus **VACATES** that portion of its Minute Order (**# 104**) of October 19, 2011 that

denied the Plaintiff's Motion to Dismiss and instead **GRANTS** that motion.  The remaining

claim in this action is **DISMISSED WITHOUT PREJUDICE**.  There being no further claims

to adjudicate in this case, all further settings are **VACATED**, and the Clerk of the Court is

directed to close this case.

Dated this 9th day of January, 2012

**BY THE COURT:**

Marcia S. Krieger
United States District Judge